UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HERBERT WARD                                                         PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:09-CV-00802

ARAMARK CORRECTIONS FOOD SERVICE, *et al.*                  DEFENDANTS

## **MEMORANDUM OPINION**

This matter is before the court on plaintiff Herbert Ward's motion to compel discovery (DN 83) and defendant ARAMARK Correctional Service, LLC's ("ARAMARK") motion for summary judgment (DN 85). For the reasons stated herein, ARAMARK's motion for summary judgment will be granted and Ward's motion to compel discovery will be denied.

## **I.**

In his *pro se* complaint and amended complaints (DNs 1, 4, & 6), Ward alleged, pursuant to 42 U.S.C. § 1983, that ARAMARK, which provides food services under contract with the Kentucky Department of Corrections, violated his Eighth Amendment rights. Specifically, Ward claimed that ARAMARK served him food of inadequate quality, quantity, and preparation at the Kentucky State Reformatory ("KSR"). Ward complained that, as a result, he had suffered intestinal problems, gastric reflux, and weight loss.[1]

---

[1] In his complaint and first amended complaint, Ward also brought claims against the Kentucky Department of Corrections. In a second amended complaint (DN 6), Ward brought claims against John Snyder, ARAMARK's former Food Services Director at KSR. This court has already dismissed Ward's claims against the Department of Corrections and Snyder (DNs 8 & 56). In addition, this court has dismissed Ward's claim that ARAMARK engaged in unsanitary practices (DN 56).

ARAMARK has now moved for summary judgment (DN 85). ARAMARK advances two principal arguments: (1) the food ARAMARK provided to inmates at KSR was constitutionally adequate, and (2) Ward has no proof that he suffered physical injury as a result of ARAMARK's food. Ward has responded (DN 90), ARAMARK has submitted a reply (DN 94), and Ward has tendered a sur-reply (DN 96). In addition, Ward has moved to compel discovery (DN 83), which ARAMARK has opposed(DN 86). Thus, the motions are ripe for disposition.

## II.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Prison officials can be found liable for denying an inmate humane conditions if the officials know of and disregard an excessive risk to

inmate health or safety. *Farmer*, 511 U.S. at 837. Thus, "deliberate and unnecessary withholding of food essential to normal health can violate the Eighth Amendment." *Cunningham v. Jones*, 567 F.2d 653, 656, 660 (6th Cir. 1977). However, it is also true that "restrictive and even harsh" conditions of punishment do not necessarily violate the Eighth Amendment, since "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, the Sixth Circuit has held that a diet solely consisting of food loaf does not violate the Eighth Amendment because the loaves met the nutritional and caloric requirements for humans. *See, e.g.*, *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002). Likewise, food that "occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Id.* (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).

ARAMARK argues that it is entitled to summary judgment because the undisputed evidence shows that it served Ward appropriate portions of nutritious foods. In support of its argument, ARAMARK has provided this court with an affidavit of Jane L. Stadick, ARAMARK's Director of Nutrition and Operational Support Services. According to Stadick's sworn affidavit, she became a registered dietitian in 1984 after having obtained a Bachelor of Science degree in dietetics and a Master of Science degree in clinical nutrition. Stadick's affidavit stated that she was familiar with the menus written pursuant to ARAMARK's contract with the Kentucky Department of Corrections, that the menus had been reviewed and approved by the Commonwealth's representative and met the American Correctional Association

- 3 -

Guidelines regarding nutrition, and that ARAMARK provides inmates with a nutritionally adequate diet that is prepared and served under conditions that are not dangerous to the health and well-being of the inmates. In addition to Stadick's affidavit, ARAMARK provided this court with various documents pertaining to the grievance filed by Ward concerning the food served by ARAMARK. Those documents include a letter to Ward from M. H. Geddes, an ARAMARK general manager; the KSR warden's review of Ward's grievance; and the Commissioner's review of Ward's grievance. Those documents stated that the KSR master menu was approved by a state dietician, who worked with ARAMARK dietitians, and that all meals contained the correct nutritional values for the inmates. In short, ARAMARK put forth evidence that the menu at KSR provides food of sufficient nutritional value to preserve health.

Thus, we turn to the next question: whether there exists sufficient evidence for a jury to find that ARAMARK's menu did not meet the standards of the Eighth Amendment. Ward has not submitted any evidence that calls into question whether KSR served food of sufficient nutritional value to preserve health. First, the majority of Ward's complaints show only his displeasure with the kind of foods that are served, not that the food served was insufficiently nutritious. For instance, in his response to ARAMARK's summary judgment motion, Ward argues that he was not provided fruit beyond "old" oranges, "watered down" apple juice, and a "rare[]" apple (DN 90 at 3). Ward apparently prefers bananas, peaches, pineapples, and other fruits. He also laments that the bread was often stale and the biscuits cold or not fully cooked (*id.*). Ward similarly takes issue with the fact that the vegetables he received were typically carrots, peas, green beans, pinto beans, navy beans, and potatoes, and the meats he received were typically poultry (*id.*). He complains that the salads were meager; grits, oatmeal, and gravy were

watery; and food was often saved and reused for later meals (*id.*). However, Ward is not entitled under the Constitution to a selection of his meals, only to food that is nutritionally adequate. Thus, his general complaints about the types of food he received are not sufficient to show that there is a material dispute of fact that would require resolution at a trial.

Ward also argues that the inadequacy of ARAMARK's food is shown by Ward's alleged medical issues. Specifically, Ward complains that he lost weight due to the supposed inadequacy of ARAMARK's food. However, the only evidence before this court concerning Ward's weight–his medical records–is insufficient to allow a reasonable jury to conclude that Ward was receiving inadequate nutrition. The vital signs report in his medical records show that in December of 2005, Ward weighed 137 pounds (DN 85-9 at 32). Over the ensuing three-plus years, Ward's weight fluctuated–some months he gained weight and other months he lost it (*id.* at 27-32). In fact, by March of 2007, Ward had gained enough weight on average that he was up to 154.8 pounds (*id.* at 30). Over the ensuing two years from that point, he dropped down to 139.8–two pounds more than what he weighed at the beginning of the records provided to this court (*id.* at 27). In short, the vital signs report reflects that Ward's weight gently fluctuated over time, not that he suffered any sort of sustained or drastic weight loss that would allow for the inference that ARAMARK's food was insufficiently nutritious. Moreover, the other medical records confirm that Ward was not losing weight due to ARAMARK's menu. In particular, one medical record, dated August 29, 2006, noted that Ward was complaining about being underfed, but stated that he had actually gained 6 pounds over the previous three months (*id.* at 5). Another medical report from December 2009 noted that Ward had "gradually" lost just six pounds since July of that year (*id.* at 17).

- 5 -

Nor are Ward's complaints of gastric reflux and of stomach discomfort and "gurgling" sufficient to create a dispute of fact as to whether the meals he received were adequately nutritious. Even if some of the food ARAMARK served disagreed with Ward's system, it does not mean that the food was not adequately nutritious within the meaning of the Eighth Amendment. *See Hamm*, 774 F.2d at 1575 ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."). Further, Ward's medical records reflect that his medical providers believed that Ward's stomach gurgling may have been due to lactose intolerance, not because ARAMARK's food was inadequately nutritious (*see* DN 85-9 at 14-15, 17). In short, Ward's medical records are simply insufficient to allow for the inference that ARAMARK knew of and disregarded an excessive risk to Ward's health or safety. *See Farmer*, 511 U.S. at 837.[2]

Having concluded that Ward's general complaints about the menu and his alleged medical issues are insufficient for a reasonable jury to find that ARAMARK provided him food that was not adequately nutritious, this court is left with nothing more than Ward's self-serving and conclusory allegations that the food he received was not nutritious. However, "[i]t is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002). ARAMARK is thus entitled to summary judgment because, even viewed in the light most

---

[2] Ward also argues that the medical staff should have ordered a special diet for him to address his various medical conditions. However, Ward has not named any of the medical staff as defendants; thus those complaints are of no avail. Moreover, Ward never advanced any claim in his complaint or amended complaints (DNs 1, 4, & 6) that ARAMARK knew of and disregarded his alleged need for a special diet. As Ward failed to make any allegations of that nature, ARAMARK cannot be held liable for any alleged failure to provide Ward with a special diet. *See Farmer*, 511 U.S. at 837 (holding that a prison official is not liable under the Eighth Amendment unless the official "knows of and disregards an excessive risk to inmate health or safety").

favorable to Ward, the evidence is insufficient for a reasonable jury to find that ARAMARK's food was nutritionally deficient such that it violated the Constitution.

Additionally, ARAMARK is entitled to summary judgment on Ward's Eighth Amendment claim for monetary relief on a second, independent basis. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The physical injury required by that statute for a § 1983 claim does not need be significant, but it must be more than *de minimis*. *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005). A *de minimis* injury is the type of injury for which a person in the regular and ordinary events and activities of their daily lives would not seek professional medical care because home treatment would suffice. *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D.Tex. 1997).

Here, the evidence of Ward's alleged injuries is insufficient fo a reasonable jury to conclude that he suffered any more than a *de minimis* injury from eating ARAMARK's food. Ward's complaint alleges that he suffered weight loss, gastric reflux, and stomach discomfort and gurgling. To be sure, this court previously found that, taking Ward's allegations as true, he had alleged more than a *de minimis* physical injury and thus his claims could survive a motion to dismiss. *See Ward v. ARAMARK Corr. Food Serv.*, 2011 WL 1542108, at *3-*4 (W.D.Ky. Apr. 22, 2011) (citing *Pratt v. Corr. Corp. of Am.*, 124 F. App'x 465, 467 (8th Cir. 2005). However, as noted above, the evidence concerning Ward's weight does not bear out that he suffered any sort of substantial and sustained weight loss. Ward's weight fluctuations over a lengthy period of time simply were not physical injury within the meaning of § 1997e(e). *See Gashiyah v. Wis.*

- 7 -

*Dep't of Corr.*, 2006 WL 2845701, at *11 (E.D.Wis. Sept. 29, 2006) (holding that drop from 155-165 pounds to 133 pounds was not the type of substantial weight loss that would equate to a physical injury).

Likewise, the evidence concerning Ward's supposed gastric reflux and stomach issues is not sufficient for a reasonable jury to find that they were anything more than *de minimis* physical injuries. Ward's medical records show that he was given Zantac for his gastric reflux (DN 85-9 at 11). That the medical staff found it sufficient to provide Ward with only a standard over-the-counter medicine for his gastric reflux bespeaks the *de minimis* nature of that medical condition. Additionally, Ward's medical records show that he was diagnosed as potentially lactose intolerant and told to decrease the amount of milk and meat in his diet in an attempt to reduce his stomach issues, such as gurgling (DN 85-9 at 13-17). Thus, even assuming that his stomach gurgling could constitute a physical injury, the medical records make clear that the stomach issues were not due to ARAMARK's food. In short, there is no evidence that Ward suffered any physical injury that was more than *de minimis* as a result of ARAMARK's supposedly inadequately nutritious menu.

In sum, ARAMARK is entitled to summary judgment on Ward's claims because no reasonable jury could find, based on the evidence before this court, that ARAMARK served insufficiently nutritious food or that Ward suffered a physical injury as a result of that food.

### III.

Although we find that ARAMARK is entitled to summary judgment, we nevertheless will pause to briefly address Ward's motion to compel discovery and make clear that the items Ward seeks in that motion would not change the conclusion reached by the court on the summary judgment motion.

A. *The Relevant Background*

During discovery, Ward submitted a request to ARAMARK for production of certain documents (DN 79). Relevant here are request numbers 1, 2, 3, and 5, which are quoted as follows: (1) "KYDOC/ARAMARK food service contract in its entirety such is relevant to the above styled action"; (2) "Any and all reports/fines imposed upon Aramark food service at Ky. State Reformatory by Board of Health regarding Food Safety/Sanitation infractions, specifically for month of May 2008 and May 2011"; (3) "Any and all write-ups against Aramark food service employees for food safety/sanitation infractions by KSR admin., KSR Corr. Officers, medical personnel, etc."; and (5) "Any and all write-ups, incident reports of 'sewage back-up,' 'maggots' in/around food prep, food serving areas, coolers, etc., in KSR chowhall & any and all reports/complaints of sick/diseased inmate kitchen workers handling foods, serving foods, etc., photographs requested for viewing" (*id.*).

ARAMARK responded to Ward's request for production (DN 86-1). With respect to Ward's first request, for the contract between ARAMARK and Kentucky, ARAMARK argued that the request was not "reasonably calculated to lead to the discovery of evidence admissible at trial because there is no part of ARAMARK's contract with Kentucky that is relevant to this lawsuit." ARAMARK also argued that the contract was confidential and proprietary information that Kentucky law prevented Ward from receiving. As to the remaining requests–numbers 2, 3,

and 5–ARAMARK, after voicing objections to the requests, answered each of them by stating

that the requested documents or information did not exist. Specifically, in answering request

number 2, ARAMARK stated:

> [T]he Board of Health has imposed no reports or fines on ARAMARK in the
> months of May, 2008, and May, 2011. Further, the Commonwealth of Kentucky
> assigns an officer to monitor ARAMARK's compliance with its obligations to
> serve nutritious food and operate a clean kitchen, and inspections are conducted
> monthly and quarterly. No major violations have been reported.

And with respect to request number 3, ARAMARK stated:

> [N]o ARAMARK employee at KSR has received a "write-up" as it relates to food
> safety or sanitation in the past three years. Further, the Commonwealth of
> Kentucky assigns an officer to monitor ARAMARK's compliance with its
> obligations to serve nutritious food and operate a clean kitchen, and inspections
> are conducted monthly and quarterly. No major violations have been reported.

Finally, with respect to request number 5, ARAMARK stated, "ARAMARK has not been

written up or reported for incidents involving maggots, sewage back-ups, or any other sanitation

issue in or around the food preparation and service areas at KSR."

Thereafter, Ward filed a motion to compel discovery. Ward sought an order directing

ARAMARK to produce the contract between ARAMARK and the Kentucky Department of

Corrections; any & all "write-ups" and fines imposed upon Aramark by KRS; any and all Board

of Health inspection reports; and any and all "photographic evidence" of sewage back-up,

maggots under coolers, and "contaminated foods and/or cooking/storage areas" in the kitchen or

dining hall of KRS. ARAMARK responds, in line with its response to the request for production

of those documents, that the contract is both irrelevant and undiscoverable pursuant to Kentucky

law, and that the remaining requested documents simply do not exist to be produced.

*B. The Contract Between ARAMARK and the Kentucky Department of Corrections*

In the context of discovery requests, a matter is relevant if it reasonably may lead to the discovery of admissible evidence. FED. R. CIV. F. 26(b)(1). As described above, to prove his Eighth Amendment claim, Ward is required to show that the food ARAMARK served him did not contain sufficient nutritional value to preserve health, and further, that he suffered a physical injury that is more than *de minimis*.

The contract between ARAMARK and Kentucky is not relevant to those issues. Simply put, there is no reason to think that the contract will show–or lead to evidence that will show–that the quality or quantity of food Ward received was insufficiently nutritious. Nor, of course, would the contract have anything to say about whether Ward suffered an injury.

Ward argues that he needs to see ARAMARK's contract with the Commonwealth because the KSR medical staff told him that the contract stated that "special diets" were not authorized. However, whether or not the contract authorized special diets is irrelevant to Ward's claims. In Ward's complaint and amended complaints (DNs 1, 4, & 6), he never alleges that ARAMARK was made aware of his supposed need for any sort of special diet. For the most part, his allegations concern only ARAMARK's general menu. With respect to his supposed need for a special diet of any sort, he complains only that the medical staff supposedly refused to order him a "soft diet" after he lost his teeth because the medical staff allegedly believed ARAMARK would not fulfill the order (DN 6). But those allegations do not state any claim against ARAMARK, since ARAMARK can only be held liable if it knew of and disregarded an excessive risk to Ward's health. *Farmer*, 511 U.S. at 837. In short, the only viable claim Ward advanced against ARAMARK was that ARAMARK's general menu was insufficiently nutritious. Because any provision of ARAMARK's contract with the Commonwealth concerning

special diets is irrelevant to that claim, his motion to compel production of the contract will be denied, and, as detailed above, summary judgment will be granted on that claim.

*B. The Remaining Requests*

As for the remaining requested documents Ward asks this court to compel ARAMARK to produce, ARAMARK answered Ward's initial request for production by denying that there were such documents. Thus, ARAMARK has appropriately answered the request and there is nothing for this court to compel ARAMARK to produce.

**CONCLUSION**

In sum, the evidence presented to this court demonstrates that summary judgment in ARAMARK's favor is appropriate. And, the evidence sought by Ward in his motion to compel would not be relevant to either issue upon which ARAMARK is entitled to summary judgment. Thus, ARAMARK's motion for summary judgment will be granted, and Ward's motion to compel discovery will be denied.

A separate order will be issued in accordance with this opinion.

May 17, 2012

**Charles R. Simpson III, Judge**
**United States District Court**

```
cc:  Plaintiff, pro se
     Counsel of Record
```

- 12 -